Hector A. VILLA, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 7, 1982.

Decided: Feb. 8, 1983.

Patrick Scanlon, Barros, McNamara & Scanlon, Dover, for defendant below, appellant.

James B. Ropp, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, QUILLEN and MOORE, Justices.

MOORE, Justice:

Hector A. Villa appeals the revocation of his driver's license following the Superior Court's declaration that he was an habitual offender of the motor vehicle laws of this State (21 *Del.C.*, ch. 28). Villa argues that the procedure by which habitual offender status is determined is criminal in nature and a direct punishment for a traffic infraction. He also contends that the magistrate who accepted his latest guilty plea to a traffic offense failed to warn him (1) that he would be subject to further action as an habitual offender and (2) of the possible outcome of such proceedings. We reject Villa's claim that revocation of his driving privileges, because of habitual violations of the motor vehicle laws of Delaware, is a punishment or that such proceedings are criminal in nature. Thus, the magistrate was not required to advise him of the possibility of such administrative proceedings or their possible outcome. We therefore affirm.

I.

Chapter 28 of the motor vehicle code (21 *Del.C.* §§ 2801–13) creates a procedure by which an individual who continually violates the motor vehicle laws of Delaware may lose his license for up to five years. An "habitual offender" is defined by 21

Del.C. § 2802 as one who has violated traffic laws of a certain type and number within a specified period of time.[1] Once the number of a person's convictions meets the statutory requirements (21 Del.C. § 2802), the Secretary of Public Safety must certify that conviction record to the Attorney General (21 Del.C. § 2803). A petition is then filed in Superior Court, requesting an habitual offender determination against the person named. 21 Del.C. § 2804. Upon a hearing, the court is limited to an inquiry whether the person cited to appear is the one named in the conviction record and that he was actually convicted of the offenses listed. 21 Del.C. §§ 2806–07. If the court determines those questions have been answered in the affirmative, it must enter judgment against the person cited and revoke his license for either three or five years. 21 Del.C. §§ 2807, 2809.

In October 1981, the Attorney General petitioned to have Villa declared an habitual offender. The State charged that Villa had been convicted in October 1980 of driving while his license had been suspended (21 Del.C. § 2756) and twice convicted in August 1981 of driving in violation of conditions imposed on an occupational license [21 Del.C. § 2733(i)].[2] At the hearing, the State established that Villa was the person named in the petition and conviction record and that he had been convicted of the three offenses alleged in the petition.

Villa challenged the admissibility of one such offense: his conviction on August 31, 1981 of driving in violation of a condition imposed on an occupational license. He contended that although he pleaded guilty to that charge, his plea was improperly accepted since the magistrate did not advise him that he would be subject to license revocation or habitual offender proceedings. The Superior Court judge rejected Villa's

challenge, holding that the convictions relied on by the State in an habitual offender proceeding were not subject to collateral attack. See State v. Kamalski, Del.Super., 429 A.2d 1315, 1320–21 (1981). Following the entry of an order declaring him to be an habitual offender and revoking his license for five years, Villa filed this appeal.

### II.

### A.

Villa argues that an habitual offender proceeding is criminal in nature. He also contends that habitual offender status and the attendant license revocation are criminal punishments directly resulting from his convictions of numerous traffic offenses. The State responds that this is a civil proceeding, and that any criminal penalty is separate from and additional to any license revocation.

■ Revocation proceedings initiated under habitual offender statutes are considered civil administrative actions. Campbell v. State, Colo.Supr., 176 Colo. 202, 491 P.2d 1385 (1971); State v. Kamalski, Del. Super., 429 A.2d 1315, 1318 (1981); Ritch v. Director of Vehicles & Traffic, D.C.Ct.App., 124 A.2d 301 (1956); Beaudoin v. Petit, R.I.Supr., 409 A.2d 536 (1979). The purpose of the Superior Court proceedings mandated by 21 Del.C. §§ 2804–07 is to assure the defendant of due process when revocation is imposed. Kamalski, 429 A.2d at 1319. See Carter v. Department of Public Safety, Del. Super., 290 A.2d 652, 656 (1972). See also Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 26 L.Ed.2d 90 (1971). The nature of the proceedings reflects what is involved here.

■ It is well-established that revocation of one's driver's license is not a criminal penalty or punishment. City of Albany v. Key, Ga.App., 124 Ga.App. 16, 183 S.E.2d

---

1. It is suggested that, as a matter of courtesy, written notice of the provisions of the statute in this aspect should be given upon the issuance of each restricted license.

2. Villa's traffic record was extensive to say the least. Over a four-year period, he had been charged with speeding eight times. His license had been ordered suspended for a total of 13 months, and he had been arrested three times for driving during a suspension or in violation of an occupational license.

20 (1971); *People v. Jenkins,* Ill.App., 128 Ill.App.2d 351, 262 N.E.2d 105 (1970); *Commonwealth v. Burnett,* Ky.Ct.App., 274 Ky. 231, 118 S.W.2d 558 (1938); *Anderson v. Commissioner of Highways,* Minn.Supr., 267 Minn. 308, 126 N.W.2d 778 (1964); *State v. Amick,* Neb.Supr., 173 Neb. 770, 114 N.W.2d 893 (1962); *State v. Bowles,* N.H.Supr., 113 N.H. 571, 311 A.2d 300 (1973); *Barnes v. Tofany,* N.Y.Ct.App., 27 N.Y.2d 74, 313 N.Y.S.2d 690, 261 N.E.2d 617 (1970); *Davison v. State,* Tex.Crim.App., 166 Tex.Cr.R. 376, 313 S.W.2d 883 (1958) (on rehearing); *Prichard v. Battle,* Va.Supr., 178 Va. 455, 17 S.E.2d 393 (1941); *State v. Scheffel,* Wash. Supr., 82 Wash.2d 872, 514 P.2d 1052 (1973). *See Hawker v. New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898). Instead, revocation is essentially civil in nature, having as its goal "the chastening of the errant motorist" (*Barnes,* 261 N.E.2d at 620) and, more importantly, protection of the public from a dangerous driver. *Burnett,* 118 S.W.2d at 560; *Anderson,* 126 N.W.2d at 784; *Barnes,* 261 N.E.2d at 620; *Prichard,* 17 S.E.2d at 396. Revocation only means that the licensee is no longer fit to hold and enjoy the driving privileges granted to him by the State. *Prichard,* 17 S.E.2d at 396. The revocation is also consistent with the primary purpose of the habitual offender provision—to foster safety on the streets and highways of this State. *Kamalski,* 429 A.2d at 1318; 21 *Del.C.* § 2801. Thus, we conclude that both the proceedings established by the habitual offender statute and the resultant action of the court are civil in nature.[3]

### B.

Our decision in *State v. Casto,* Del.Supr., 375 A.2d 444 (1977) allows a magistrate to accept a guilty plea only if he is satisfied that the plea is knowingly and intelligently made. The magistrate must determine, *inter alia,* that the defendant "understands the consequences of entering a plea of guilty, including particularly the possibility of incarceration". *Casto,* 375 A.2d at 449. Villa contends that the magistrate, when accepting his guilty plea to the third traffic offense, should have informed him of the possibility of habitual offender proceedings and license revocation.

Regardless of the characterization of the proceedings and license revocation as either civil or criminal in nature, the proceedings and the revocation are collateral consequences of the guilty plea. *People v. Jenkins,* Ill.App., 128 Ill.App.2d 351, 262 N.E.2d 105 (1970); *Commonwealth v. Lea,* Pa.Commw., 34 Pa.Cmwlth. 310, 384 A.2d 269 (1978). Without a doubt, the defendant must understand the consequences of pleading guilty, but this does not include informing him of collateral civil or criminal consequences of the plea. 1 C. Wright, Federal Practice & Procedure: Criminal § 173, at 609–10 (2d ed. 1982). *See, e.g., United States v. King,* 618 F.2d 550, 552 (9th Cir. 1980) (estoppel effect in civil tax litigation of guilty plea in criminal tax proceedings need not be explained to defendant). The magistrate was not required to inform Villa that he was subject to license revocation and habitual offender proceedings. *Jenkins, supra; Lea, supra.* The warnings and advice that the magistrate gave were more than adequate under the standards of *Casto.*

\*     \*     \*

AFFIRMED.

---

**3.** Because the proceeding is civil, we have appellate jurisdiction over the Superior Court's declaration of habitual offender status and license revocation. Del. Const. Art. IV, § 11(1)(a); 21 *Del.C.* § 2808.