Eric BARKLEY, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 116, 1998.

Supreme Court of Delaware.

Submitted: Oct. 14, 1998.
Decided: Feb. 19, 1999.

Joseph M. Bernstein, Wilmington, for appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., constituting the Court En Banc.

WALSH, Justice:

In this appeal from the Superior Court, we are required to determine whether the automatic revocation of driving privileges that must be imposed at the time of sentencing for certain drug offenses is a direct penal consequence of a plea of guilty. The Superior Court ruled that the license revocation was a collateral consequence of a plea of guilty and the defendant's awareness of that consequence was not required incident to the acceptance of the plea under the applicable Superior Court Criminal Rule. We conclude, however, that the immediate and automatic imposition of the revocation at the time of sentencing constitutes a direct penal consequence of a plea of guilty. We further conclude that a defendant must be advised of that consequence in connection with the entry of a guilty plea. Accordingly, the Superior Court's refusal to permit withdrawal of a guilty plea by a defendant not so advised is error and must be reversed.

I

On September 15, 1997, appellant, Eric Barkley ("Barkley"), pursuant to a plea bargain, entered a guilty plea to a charge of possession of cocaine, in violation of 16 Del.C. § 4753. On the same date, the Superior

Court sentenced Barkley to one year level V incarceration suspended for one year level III probation, suspended after six months for six months level II probation. Following sentencing, the New Castle County Prothonotary notified the Delaware Division of Motor Vehicles that Barkley's driver's license should be revoked for two years pursuant to 21 *Del.C.* § 4177K(a)[1] as a result of his conviction for the possession offense.

On January 22, 1998, Barkley filed a motion pursuant to Superior Court Criminal Rule 61 to set aside his earlier guilty plea. His claim was that if he had known that his license would be revoked as a result of his guilty plea, he would not have pleaded guilty to the charges against him. The Superior Court denied the motion, in reliance upon an earlier decision of that court which determined that the automatic suspension mandated by 21 *Del.C.* § 4177K(a) was a collateral consequence of a guilty plea, the disclosure of which was not required at the time of a plea of guilty. Barkley filed a motion for reargument which was denied by the Superior Court. This appeal followed.

## II

■ The ruling of the Superior Court that the suspension of driving privileges under 21 *Del.C.* § 4177K(a) is a collateral consequence of a conviction following a guilty plea is one of law. Our standard of review is thus *de novo*. *Lewis v. State*, Del.Supr., 626 A.2d 1350, 1354 (1993).

■ The general standards that underpin the acceptance of a guilty plea under Delaware law are well established. A judge who accepts a guilty plea must be satisfied that the plea is entered knowingly and voluntarily. *Sullivan v. State*, Del.Supr., 636 A.2d 931, 937, *cert denied*, 513 U.S. 833, 115 S.Ct. 110, 130 L.Ed.2d 57 (1994); *Brown v. State*, Del.Supr., 250 A.2d 503, 505 (1969). To ensure a plea is knowing and voluntary, a trial judge must be certain the defendant understands the direct consequences of pleading guilty. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "The direct consequences of a plea are covered in Federal Rule 11, after which this [c]ourt's Rule 11 (effective in January 1992) was patterned." *State v. Christie*, Del.Super., 655 A.2d 836, 839, *aff'd*, Del.Supr., 655 A.2d 306 (1994). The consequences required to be explored in the colloquy by the trial judge are enumerated in Superior Court Criminal Rule 11(c).[2]

■ In support of the Superior Court's ruling, the State, without disputing Barkley's claim that he was not advised of the application of 21 *Del.C.* § 4177K(a), argues, in effect, that Barkley's understanding of its application as a consequence of his plea is irrelevant since the loss of driving privileges is a mere collateral result of his guilty plea. The State contends that the mandatory loss of one's driving privileges is a civic consequence that is analogous to a convicted felon's loss of the right to vote or serve on a jury. *See* Del. Const. art. V, § 2; 10 *Del.C.* § 4509(b)(6). The historic rationale for both of those civic consequences can be traced to ancient Greece and was not punishment but to protect the legal system from corruption by the participation of felons. *See* Gary L.

---

1. 21 *Del.C.* § 4177K. Revocation of license for persons convicted of all drugs offenses.

   (a) Any person who pleads guilty to or is convicted of, including a guilty plea or conviction pursuant to § 4764 of Title 16, possession of a controlled substance under §§ 4752, 4753, 4754, 4754A of Title 16 ... shall, in addition to any and all other penalties provided by law, have the person's driver's license and/or driving privileges revoked by the Secretary for a period of 2 years from the date of sentencing.

2. (c) Advice to Defendant.

   ... Before accepting a plea of guilty or nolo contendere to a felony or a class A misdemeanor, or to any other offense for which a sentence of imprisonment will be imposed, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the following:

   (1) The nature of the charge to which the plea is offered, *the mandatory minimum penalty provided by law, if any,* and the maximum possible penalty provided by law, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and.... Super.Ct.Crim.R. 11(c)

   (Emphasis supplied).

Reback, *Disenfranchisement of Ex-felons: A Reassessment,* 25 STANFORD L.REV. 845 (1973); Note, *The Disenfranchisement of Ex-felons: Citizenship, Criminality and the Purity of the Ballot Box,* 102 HARV.L.REV. 1300 (1989).

This Court has not defined the term "direct consequence" but it has found a definition under federal sentencing decisions. "A direct consequence is one that has a 'definite, immediate, and largely automatic effect' on the range of the defendant's punishment." *Parry v. Rosemeyer,* 3rd Cir., 64 F.3d 110, 114 (1995), *cert. denied,* 516 U.S. 1058, 116 S.Ct. 734, 133 L.Ed.2d 684 (1996), *quoting Cuthrell v. Director, Patuxent Inst.,* 4th Cir., 475 F.2d 1364, 1366, *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). An example of a direct consequence is a mandatory minimum term of imprisonment or a mandatory parole term imposed by statute. *See Carter v. McCarthy,* 9th Cir., 806 F.2d 1373, 1376 (1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). Superior Court Criminal Rule 11(c), which governs the issue before us, requires that the trial judge be satisfied that the defendant understands the "mandatory minimum penalty provided by law." If the license revocation is a "penalty," it must be disclosed and understood as part of the plea colloquy under the Rule.

A collateral consequence "is one that is not related to the length or nature of the sentence imposed on the basis of the plea." *United States v. Romero–Vilca,* 3d Cir., 850 F.2d 177, 179 (1988); *Kincade v. United States,* 3rd Cir., 559 F.2d 906, 909 (*per curiam*), *cert. denied,* 434 U.S. 970, 98 S.Ct. 519, 54 L.Ed.2d 458 (1977). In *Romero–Vilca,* the defendant moved to invalidate his guilty plea on the basis that the trial court had failed to inform him that he could face deportation because of his guilty plea. 850 F.2d at 179. The Court of Appeals in rejecting that claim, concluded that while deportation might follow, it was a *potential* result and thus merely a collateral consequence of the plea. *Id.*

Although this Court has not directly ruled upon the question of whether loss of driving privileges is a collateral consequence of a guilty plea, we did note, in a different context, that license revocation "proceedings initiated under habitual offender statutes are considered civil administrative actions." *Villa v. State,* Del.Supr., 456 A.2d 1229, 1231 (1983). Because the revocation proceedings were civil, we ruled in *Villa* that a defendant pleading to a traffic offense need not be advised of the consequences of a future revocation proceeding. *Id.* at 1230, 1232.

The present appeal, however, is not controlled by our holding in *Villa.* Unlike a revocation proceeding based on habitual driving offenses, the revocation mandated by 21 *Del.C.* § 4177K(a) is not accomplished through a separate administrative proceeding. In fact, the language of the statute supports the conclusion that the General Assembly considered it to be one of the "other penalties" relating to controlled substances. That subsection provides:

> Any person who pleads guilty to or is convicted of, including a guilty plea or conviction pursuant to § 4764 of Title 16, possession of a controlled substance under §§ 4752, 4753, 4754, 4754A of Title 16 ... *shall, in addition to any and all other penalties provided by law, have the person's driver's license and/or driving privileges revoked by the Secretary for a period of 2 years from the date of sentencing.*

(Emphasis supplied).

Indeed, as we understand the practice the defendant is required to surrender his driver's license at the time of sentencing if it is in his possession. 21 *Del.C.* § 4177K(c). More importantly, the Division of Motor Vehicles is notified by the Prothonotary of the Superior Court that the two year revocation has been imposed effective as of the date of sentencing. Neither the statute nor the Superior Court's own procedures contemplate that any further administrative action will occur, or is authorized, except that the defendant may receive "additional" notice of the revocation from the Division of Motor Vehicles. In our view, the revocation accomplished by the sentencing judge under 21 *Del.C.* § 4177K is a penalty and, not only a direct consequence of the sentencing, but a necessary and integral part of the sentencing process. Unlike the deportation proceeding implicated in *State v.*

*Christie,* Barkley's loss of driving privileges at the time of sentencing was an immediate, automatic and mandatory penalty.

The Superior Court based its rejection of Barkley's petition to withdraw his guilty plea on an earlier ruling of the Superior Court that interpreted the application of 21 *Del.C.* § 4177K(a). In *State v. Scott,* Del.Super., Crim.A. No. IK93–12–0530R1, 1994 WL 773686 (Feb. 1, 1995), the court concluded that the loss of driving privileges under § 4177K was a collateral consequence of a guilty plea because "[t]he risk of losing one's driving license is not on the list and is, in fact, clearly only a collateral consequence of the plea." 1994 WL 773686 at *3. The "list" referred to by the court is apparently those subjects that Superior Court Criminal Rule 11(c) requires the court to explore with the defendant to assure his understanding. In our view, the *Scott* court's treatment of the issue and its construction of Rule 11(c) under the principle of *"inclusio unius est exclusio alterius"* is an incomplete analysis for determining direct or collateral consequences of a guilty plea. The *Scott* court did not analyze the revocation as a penalty characterized as such in the statute, thus triggering the colloquy requirement under Rule 11(c). The Rule requires explanation by the court, and understanding by the defendant of, *inter alia,* "the mandatory minimum penalty provided by law, if any," a concept of sufficient flexibility in, our view, to include the immediate and automatic revocation of driving privileges.

The State argues that since the State's granting of a license to operate a motor vehicle is a privilege, not a right, the denial of that privilege may not give rise to a claim of lack of due process. The State's position that a driver's license is a privilege is generally correct and its argument relating to the consequences of that status as a privilege may be valid in the context of administrative proceedings leading to license revocation. But, it misses the mark in this case where, for purposes of Rule 11(c) in light of the

statutory language, the revocation occurs as an automatic and mandatory penal consequence of the sentencing process. Because the revocation is part of the "mandatory minimum penalty" under Rule 11(c), as we now hold, the failure to secure the defendant's understanding of that consequence, constitutes a violation of the Rule. That violation is entitled to redress as a matter of the proper interpretation of Rule 11(c) and regardless of its constitutional implications [3] which we need not decide.

We conclude that the entry of a plea of guilty in this case, was not made with the knowledge of the direct penal consequence of that plea under 21 *Del.C.* § 4177K(a), as required by Rule 11(c). Accordingly, the appellant's petition to withdraw his plea, should not have been dismissed, as a matter of law. The decision of the Superior Court is REVERSED and the matter REMANDED for further proceedings consistent with this opinion.

---

**3.** The notice mandated by our ruling today is easily accomplished by insertion of appropriate language in the Guilty Plea Form in common usage in Delaware courts. Proof of execution of that form by a defendant is generally considered sufficient evidence of knowledge of the consequences of a guilty plea and waiver of rights. *See Somerville v. State,* Del.Supr., 703 A.2d 629, 632 (1997).