IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY


STATE OF DELAWARE,            )
                             )
        V.                   )        DEF. I.D.: 1406005949
                             )
DEREK S. CAPERS,             )
                             )
        Defendant.           )



Submitted:  October 9, 2015
Decided:  November 17, 2015


**OPINION**

*Upon Consideration of Defendant's Motion*
*To Withdraw Guilty Plea*.
**GRANTED**.

Periann Doko, Esquire, Department of Justice, Wilmington, Delaware.  Attorney for State of Delaware.

T. Andrew Rosen, Esquire, Office of Public Defender, Wilmington, Delaware. Attorney for Defendant.

**BUTLER, J.**

# FACTUAL AND PROCEDURAL HISTORY

Defendant was indicted on several charges, the only one of which concerns us here is the single count of Possession of a Firearm by a Person Prohibited (PFBPP). This count alleges that Defendant was in possession of a firearm on June 7, 2014 and that he was previously convicted of a violent felony in New Jersey in 1995. This point is important because, due to the operation of 11 *Del. C.* §1448(e), the possession of the weapon subjects him to enhanced sentences of either 3, 5 or 10 years, depending on whether he has previously been convicted of 1 or 2 "violent" felonies and the timing between them.

At the time Defendant tendered a guilty plea, he admitted the prior violent felony conviction as articulated in the indictment and so there is no dispute but that Defendant is subject to at least 5 years incarceration. The parties indicated at the time, however, that there was some question whether Defendant had a second prior violent felony conviction in New Jersey that would further enhance the sentence and trigger the 10 year minimum mandatory provision. And thus it came to pass that Defendant tendered a guilty plea to "either" 5 years or 10 years, depending on the nature and timing of this second prior felony conviction in New Jersey.

There were a couple of procedural developments from that point to here. First, the presentence office reported that Defendant did indeed have a second conviction in New Jersey for "Distribution of a Controlled Substance." The

presentence office, however, noted that this was not considered a "violent felony" under New Jersey law and that therefore, the 10 year mandatory provision of section 1448(e)(1)(c) was not implicated. The State filed a protest with the Court and sentencing was deferred to consider that issue.

After consideration, the Court ruled that, in the context of a person prohibited sentencing, the provision of 11 *Del. C.* §4201(c) defining "violent felonies" was intended to include offenses in other jurisdictions that prohibited the same behavior as "violent felonies" in Delaware regardless whether the foreign jurisdiction designated the behavior "violent" or not.[1]

This teed the matter up for sentencing once again but once again it came off the calendar. This time, the defense indicated that it would seek to withdraw the guilty plea based on the Court's ruling regarding the prior New Jersey drug conviction. The motion to withdraw the plea has now been fully briefed.

## STANDARD OF REVIEW

"A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court."[2] The Court may permit the withdrawal of a guilty plea prior to sentencing for "any fair and just reason," and thereafter only pursuant to Rule 61.[3]

---

[1] *See* 11 *Del. C.* § 1448(e)(3).

[2] *Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007) (quoting *Blackwell v. State*, 736 A.2d 971, 972 (Del. 1999)).

[3] Super. Ct. Crim. R. 32(e).

The defendant bears the burden to show that there is a fair and just reason to permit the withdrawal.[4]

## DISCUSSION

The benefit of hindsight leads the Court to conclude that it should not have accepted this guilty plea when there was so much unknown regarding Defendant's prior conviction(s) in New Jersey. Certainly both sides were aware that he had a prior violent felony conviction for Manslaughter in New Jersey – that much was spelled out in the indictment and, as stated, was not in controversy. And we can assume that Defendant knew he had a conviction for at least some sort of drug charge in New Jersey – presumably he was there when the conviction was rendered. But it is easy for the Court to appreciate that Defendant would not believe his New Jersey conviction for drugs was a "violent felony." Indeed, New Jersey does not categorize it as such while Delaware does.[5]

---

[4] *Scarborough*, 938 A.2d at 649.

[5] Delaware's experience with calling drug crimes "violent felonies" can be traced to H.B. No. 507, passed by the General Assembly in 1996. Indeed, this was the first attempt by the General Assembly to define the term violent felony, as it had no use as a defined term before then. But in 1996 the legislature enacted an amendment to the Habitual Offender law, 11 *Del. C.* § 4214 (a) to create a whole new class of minimum mandatory sentences. Prior to 1996, an offender designated "habitual" by virtue of section 4214(a) could be sentenced "up to" life in prison, but the precise sentence was left to the discretion of the sentencing judge. Under the 1996 amendment, any offender being sentenced for a fourth felony that is considered a "violent felony" must be given the statutory maximum sentence. And, therefore, the legislature needed a specific list of "violent felonies" which section 4201(c) provided. (CONT'D)

The Court is mindful that the Truth in Sentencing Guilty Plea form listed the "statutory penalty" as "5 or 10-15" meaning, essentially, that the minimum sentence was "either" 5 or 10 to 15 years in prison. Defendant now tells us that he thought he had the argument won – that because he knew the drug conviction was not a violent felony in New Jersey, he would not face the 10 year minimum sentence for 2 violent felony convictions.

Thus, as stated, the Court believes it would have been wiser to not accept such an open ended guilty plea in which neither the State nor the defense knew whether Defendant would be required to serve a 5 year or a 10 year minimum

But in defining the term, the General Assembly took the broadest possible view as to what constitutes a "violent felony." So while some obvious crimes like murder and violent assaults are on the list, some unusual characters were also included: crimes like extortion, non violent escapes from work release, stalking and racketeering. None of these are exactly desirable behaviors, but none of them are fundamentally "violent." The General Assembly cast an even broader net with respect to drug crimes. Delivery of drug paraphernalia to a minor, delivery of a non-controlled substance or a non-controlled prescription drug and possession of drugs within 1000 feet of a school were all classified as "violent" felonies. In doing so, whole swaths of drug offenders were swept up in a category of "violent" felons and now subject to minimum mandatory sentences by virtue of their prior convictions under 11 *Del. C*. § 4214(a).

This all has a direct effect on this case, because when the General Assembly amended 11 *Del. C*. § 1448 – the person prohibited law – in 2013, 79 Del. Laws ch. 124, §1 (2013), the General Assembly doubled and tripled the mandatory sentences previously applicable if the offender had prior convictions for a "violent felony." Thus, our illogically broad definition of "violent felony" in section 4201(c) impacts both habitual offender sentencing under section 4214 and our "felon in possession" charge in section 1448 in very dramatic fashion.

There are indications that some measure of temperance is softening the legislature's enthusiasm for these laws. In 2014, the General Assembly retreated in the area of drug offenses, removing "aggravated possession" from the list. And just last month, the Attorney General announced an effort to curtail the deployment of habitual offender sentencing. *See* Matt Denn, Attorney General, Remarks to Wilmington Rotary Club (Oct. 15, 2015). It may be that our 20 year experiment with the proposition that mandatory jail sentences curtail behavior on the street is coming to an end, but obviously it will be too late to be of any use to Defendant here.

4

sentence. The Court appreciates that in the sometimes rough and tumble world of criminal calendars the parties may be content to "put a thumb tack in it" and circle back to the issue after the presentence office has completed its background check. But we are not here simply calculating the priors for informational purposes. The "drug prior" in New Jersey has a direct and profound impact on where Defendant will reside for five years of his life. The Court appreciates that the parties knew there was an issue "out there" regarding Defendant's prior record. But the Court is not satisfied that deferring that issue to the sentencing calendar was a wise course, particularly when the consequences are so profound for Defendant.

The State has alleged prejudice insofar as it will have to "prepare" the case for trial, but has not otherwise articulated prejudice. If this were, for example, an assault case involving a recalcitrant witness, the Court would have more sympathy for the State's prejudice argument. But this is a very simple case involving a car stop by the police and the discovery of a handgun. The State can put the evidence on via its police witness in short order and its claim of prejudice is not well taken, at least in this case.

The Court will permit Defendant to withdraw his guilty plea under these circumstances. Better to permit pleas and impose sentences pursuant to the plea when all parties are fully informed of all the ramifications than to accept pleas with contingencies involving 5 years of incarceration hanging in the balance.

Trial will be scheduled accordingly.

**IT IS SO ORDERED.**

**/s/ Charles E. Butler**
Judge Charles E. Butler